*Ramgoolie v. Ramgoolie*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of October, two thousand twenty-four.

PRESENT:

>    RICHARD J. SULLIVAN,
>    BETH ROBINSON,*
>        *Circuit Judges.*

_____

JENNY RAMGOOLIE,

>        *Plaintiff-Appellant,*

>        v.                                                   No. 22-1409

ANDY RAMGOOLIE,

>        *Defendant-Appellee,*

_____

* Circuit Judge Rosemary S. Pooler, originally a member of the panel, passed away on August 10, 2023. The two remaining members of the panel, who are in agreement, have determined the matter. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b).

AANDCO HEALTH CARE LTD., JEREMY RAMGOOLIE, ANNIE RAMGOOLIE, KDR MEDICAL CARE LTD., KEVIN RAMGOOLIE,

*Defendants*.

_____

**For Plaintiff-Appellant:** Jenny Ramgoolie, *pro se*, Spring, TX.

**For Defendant-Appellee:** Edward S. Rudofsky, Edward S. Rudofsky, P.C., Melville, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Valerie E. Caproni, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 31, 2022 judgment of the district court is **AFFIRMED**.

Jenny Ramgoolie, proceeding *pro se*, appeals from a judgment of the district court that awarded her damages in an amount less than what she requested in her breach-of-contract lawsuit against her brother, Andy Ramgoolie.[1] We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as necessary to resolve this appeal.

---

[1] Because the parties share the same surname, the Court refers to them by their respective first names.

As alleged in her pleadings, Jenny and Andy orally agreed to open and share equal ownership rights in AANDCO Health Care Ltd. ("AANDCO"), a dialysis center in Trinidad and Tobago. Under the terms of their agreement, Andy would provide start-up funds for the center, while Jenny would work to get the business up and running, including by preparing a business plan, sourcing the necessary equipment, and developing internal operating procedures. Once the center opened, Jenny would serve as its "Director of Clinical Operations," and Andy would be reimbursed his initial investment, after which the two would share in the profits and losses equally. Although AANDCO opened for business in 2014, Andy never filed the necessary paperwork to reflect Jenny's status as a director and fifty-percent shareholder. He eventually sold AANDCO to another company that he partially owned, KDR Medical Care Ltd. ("KDR"), effectively wiping out Jenny's equity interest without any compensation.

Jenny brought this action for breach of contract and related claims, seeking, among other things, damages reflecting her share of AANDCO's ownership and profits, payment for her labor, and reimbursement for the out-of-pocket expenses she had incurred on behalf of AANDCO. After several years of litigation, the district court entered default judgment against Andy for his failing to comply with

3

numerous discovery orders, including those directing him to produce AANDCO's financial records. The district court then referred the case to Magistrate Judge Sarah Netburn for an inquest on Jenny's damages. Judge Netburn recommended awarding damages to Jenny based only on the proceeds of the sale of AANDCO to KDR. Jenny timely objected to this recommendation and submitted additional evidence to the district judge in support of her damages assertions. Notwithstanding her objections, the district judge reviewed the recommendation for clear error and, finding none, adopted it in its entirety; the district judge later denied Jenny's motion for reconsideration. Jenny timely appealed.

Echoing the objections she made below, Jenny contends on appeal that the district court erred by not awarding her the full measure of damages for her ownership stake in AANDCO, as well as for the work she performed and the expenses she incurred on behalf of the company. We review a district court's findings of fact and calculation of damages for clear error and applicable questions of law *de novo*. *See Rana v. Islam*, 887 F.3d 118, 121 (2d Cir. 2018).

Although Jenny does not argue the point, there is an open question as to whether the district court correctly applied Federal Rule of Civil Procedure 72 when reviewing her objections to the magistrate judge's report and

4

recommendation. When a party "properly object[s]" to any portion of a magistrate's recommendation, Fed. R. Civ. P. 72(b)(3), the district judge must "give fresh consideration" to the disputed portions, *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (internal quotation marks omitted), and make a *de novo* determination on those issues, Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1)(C). While Rule 72 itself requires that objections be "specific" and "written," Fed. R. Civ. P. 72(b)(2), we as a circuit have said little about what makes an objection "proper[]" or what standard of review a district judge must apply to recommendations to which a party does not properly object. *See, e.g., Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Merely referring the court [in a single sentence] to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b).").

District courts have nonetheless filled the void, concluding that a party fails to properly object if she "makes only conclusory or general objections, or simply reiterates [her] original arguments." *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007) (internal quotation marks omitted); *see also, e.g., Edwards v. Fischer*, 414 F. Supp. 2d 342, 346 (S.D.N.Y. 2006) (finding insufficient "merely perfunctory responses, argued in an attempt to engage the district court in a

5

rehashing of the same arguments set forth in the original petition" (internal quotation marks omitted)). When confronted with these objections, district judges have regularly applied a clear-error standard of review, *see, e.g.*, *Silva*, 509 F. Supp. 2d at 366, which is the standard used, according to the Rule 72 advisory committee notes, when a party fails to make any timely objections at all. *See* Fed. R. Civ. P. 72 advisory committee's note to 1983 amendment.

More recently, however, we expressed skepticism concerning the application of clear-error review where the plaintiff's objections, in the lower court's view, sought "to relitigate an issue that was fully argued in the original briefs to the magistrate judge." *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 121 (2d Cir. 2022) (quoting *Miller v. Brightstar Asia, Ltd.*, No. 20-cv-4849 (GBD) (JLC), 2021 WL 4148896, at *3 (S.D.N.Y. Sept. 13, 2021)). On appeal, the *Miller* panel observed that, contrary to the district court's conclusions, such objections appeared to be proper since the plaintiff "took issue with a specific . . . conclusion in the report and recommendation" and, "to the extent that the objection sought to revisit an issue already argued, it was only because, in [his] view, the magistrate judge's specific error was a fundamental one." *Id.*

6

The Court in *Miller* did not resolve these unsettled questions regarding Rule 72 – namely, whether the district courts' more exacting rules for "properly object[ing]" are correct, or whether clear-error review applies for findings and recommendations that are not "properly objected to." In the end, neither do we, for the simple reason that even if the district court applied the wrong standard of review to Jenny's objections, "our own *de novo* review of the record and the [d]istrict [c]ourt's application of law to the facts of this case . . . obviates the need for a remand." *See Finkel v. Romanowicz*, 577 F.3d 79, 84 n.7 (2d Cir. 2009); *see also C.C. v. N.Y.C. Dep't of Educ.*, No. 22-0459, 2023 WL 2545665, at *2 (2d Cir. Mar. 17, 2023).[2]

We turn then to Jenny's challenges to the lower court's damages determinations. "While a party's default is deemed to constitute a concession of all well[-]pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Instead, courts must still "ascertain the amount of damages with reasonable certainty," *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155

---

[2] In conducting this review, we consider the parties' submissions for the damages inquest and the magistrate judge's report and recommendation, as well as the additional evidence Jenny submitted with her objections to the district judge and the district judge's order adopting the magistrate's report.

7

(2d Cir. 1999), supported by an "evidentiary basis" such as "detailed affidavits and documentary evidence," *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). In conducting this inquiry, a court must determine the "proper rule for calculating damages" on the claim asserted and then "assess[] plaintiff's evidence supporting" damages under the proper rule. *Credit Lyonnais Sec. (USA), Inc.*, 183 F.3d at 155.

Jenny contends, first and foremost, that she provided adequate evidence to establish with reasonable certainty the fair market value of AANDCO and thus sufficiently supported her calculation of damages, equal to a fifty-percent stake of the company. We disagree. As the magistrate judge concluded, Jenny plausibly alleged, and the evidence corroborated, the existence of an implied-in-fact contract between Jenny and Andy to own equal stakes in AANDCO, which Andy breached. Under New York law, a plaintiff deprived of her stake in a business is entitled to reasonably ascertainable damages for lost future profits or the lost value of her business at the time of the breach.[3] *See Schonfeld v. Hilliard*, 218 F.3d 164,

---

[3] Because the parties do not dispute the choice-of-law issue on appeal, we assume without deciding that New York law applies in this case. *See, e.g.*, *First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda--Permanent Mission*, 877 F.2d 189, 194 n.3 (2d Cir. 1989).

172, 175–76 (2d Cir. 2000); *see also Washington v. Kellwood Co.*, 714 F. App'x 35, 40–41 (2d Cir. 2017).

Jenny relies on the valuation reports for AANDCO (and KDR as AANDCO's purchaser) prepared by Shanaz Sukhdeo, a Trinidadian Qualified Accountant, using a discounted cash flow analysis. It is certainly the case that courts have approved the use of discounted cash flow and similar analyses as a permissible method for determining the value of a business. *See Lippe v. Bairnco Corp.*, 288 B.R. 678, 689 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004); *see also, e.g., Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 496 (2d Cir. 1995) (approving of the "extrapolati[on] [of] the value of a business as an ongoing entity from the company's past earnings"). But the fact that this methodology has been deemed reliable as a *general* matter is largely beside the point because the valuation reports and evidence submitted by Jenny do not provide a "stable foundation for a reasonable estimate" of the AANDCO's value. *See Freund v. Wash. Square Press, Inc.*, 34 N.Y.2d 379, 383 (1974); *see also Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 179 (S.D.N.Y. 2006) ("Any analysis will be only as good as the inputs to the model.").

As the lower court observed, Sukhdeo did not have access to the financial statements and records of either company. He therefore relied on a limited set of publicly available documents – primarily invoices and copies of checks paid to AANDCO by the Trinidadian government – as well as a rough estimate of certain fixed and variable costs. But the valuation reports themselves, which provided little more than top-line figures and cursory summaries of the analyses performed, did not append the underlying data on which Sukhdeo relied, nor does it seem that Jenny included all such information in her submissions for the damages inquest.

Each valuation report, for example, included minimal explanation as to the unspecified "market rate" for medical supplies, the five-percent annual growth rate, and the ten-percent discount rate used in the respective calculations. Dist. Ct. Doc. 271-7 at 4; Dist. Ct. Doc. 316-3 at 1–3. The KDR valuation report omitted any mention of the inputs used for calculating expenses, while the AANDCO valuation report noted only that Sukhdeo "extracted detailed figures" for medical supplies, labor, rent, equipment, and other overhead costs based on files Jenny "sent to [him]." Dist. Ct. Doc. 316-3 at 1–2. As far as we can tell, Jenny failed to submit or identify those files for the lower court's review of her damages

assertions. And in any event, neither she nor the valuation reports explain in any meaningful way what that data entailed, why it was reliable, or how it was used in the calculations.

We of course recognize that Andy's discovery failures made it more difficult for Jenny to provide a reasonable estimate of AANDCO's share value. *Cf. Katz Commc'ns, Inc. v. Evening News*, 705 F.2d 20, 25 (2d Cir. 1983) (explaining that "where the conduct of wrongdoers has rendered it difficult to ascertain the damages," parties have "the right to resort to reasonable conjectures and probable estimates and to make the best approximation possible" (internal quotation marks omitted)). But Jenny was still obliged to offer a "reasonable basis of computation," *id.* (quoting *In re Rothko's Est.*, 43 N.Y.2d 305, 323 (1977)), and her failure to explain or substantiate the data and assumptions used in the valuation reports is fatal to her claims concerning AANDCO's fair market value.

In light of that failure, Judge Netburn was justified in concluding that the proceeds from AANDCO's sale to KDR – $796,760 in Trinidad and Tobago Dollars ("TTD"), of which Jenny was entitled to half – provided the only concrete valuation of the company that could support a damages award. And while Jenny asserts that AANDCO was sold for a fraction of its actual value because KDR is

11

AANDCO's "alter ego" (an assertion that the magistrate judge and district judge each considered), the fact remains that Jenny failed to provide reliable evidence from which a court could, with reasonable certainty, value the shares.

Next, Jenny contends that she was entitled to damages for her work on behalf of the dialysis center both before and after its opening. Seeking hourly wages for the research she conducted between 2010 and 2014, Jenny offered a list of tasks that she completed and the time that she spent on each one. But as the district judge observed, the evidence that Jenny submitted regarding the number of hours she worked was often riddled with errors and supported by unrelated documentation. As one example, her work log indicated that she spent thirty hours on March 3, 2013 putting together a task list. These obvious deficiencies were compounded by the fact that Jenny provided no evidence that her asserted hourly rate – be it the $1,000 per hour rate that she originally requested at the inquest, or the $250 per hour rate that she requested before the district judge – was a reasonable measure of compensation for the work she performed for AANDCO. *Compare Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (reversing damages finding where plaintiff's payroll "estimates . . . were at best undocumented, and at worst, speculative"), *with Cruz v. Loc. Union No. 3 of Int'l*

*Bhd. of Elec. Workers*, 34 F.3d 1148, 1156–57 (2d Cir. 1994) (upholding as reasonable a damages award of backpay, where the record contained evidence of the relevant dates, seniority and payroll lists, and other employment compensation benefits).

Jenny's request for damages based on the salary she should have received as AANDCO's Director of Clinical Operations is equally untenable. She has neither shown nor explained how evidence of salaries for comparable positions in New York received by others, or the specific salary she received for a completely *different* and unrelated job in New York, reasonably supported a salary for a position at a dialysis center in Trinidad and Tobago. The fact that Andy defaulted does not mean that the district court was obliged to "just accept [Jenny's] statement of the damages" "at face value" during the inquest. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

Nor did the district court err in concluding that Jenny was not entitled to any damages award for her quasi-contract claims. Because Jenny established the existence of an implied-in-fact contract with Andy that covered her work for AANDCO, she could not recover damages for that work under a *quantum meruit* or unjust enrichment theory. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc.*

13

*v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). And we see no error in the district court's determination that, even if Jenny could recover under those theories, she failed to substantiate her damages claim for the repayment of expenses incurred on behalf of AANDCO.

Finally, the district court did not abuse its discretion in denying Jenny's motion for reconsideration, which primarily reiterated arguments that she had raised previously and asserted no intervening change in law. *See Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 478 (2d Cir. 2008); *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) ("A motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks omitted)). The district court also acted well within its discretion in concluding that the exhibits Jenny submitted with her motion – which she failed to provide either for the damages inquest or with her objections – did not constitute "new evidence" to justify granting reconsideration, particularly since she made no effort to explain or justify her failure to produce them earlier. *See Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010) (describing "new evidence" as that

14

which "is truly newly discovered or . . . could not have been found by due diligence" (internal quotation marks omitted)); *see also Space Hunters*, *Inc. v. United States*, 500 F. App'x 76, 81–82 (2d Cir. 2012) (denying motion because "[p]laintiffs fail to provide a convincing explanation" for their "untimely submission").

We have considered Jenny's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court