Mao Chang CHEN, Ai Min Li, Sui Wah Ko, Ji Guan Lin, Yun Yan Zou, Yue Chai Chen, Shu Yu Lin, Shu Rong Chen, Sau Pan Chau, Zi Yue Lin, Yun Ping Zou, Yu Huan Zheng, Chang Fu Li, and Qui Ping Zou, Plaintiffs,

v.

JENNA LANE, INC., RPP Fashion, Inc., Shi Yong Cheng, Defendants.

No. 98 CIV. 4494(RLC).

United States District Court,
S.D. New York.

Dec. 10, 1998.

Kenneth Kimerling, Stanley Mark, Asian American Legal Defense & Education Fund Inc., New York, for Plaintiffs.

Myint Thein Maung, New York, NY, pro se.

F. James Loprest, Jr., Special Asst. U.S. Attorney, New York, NY, for Defendants.

### ORDER and JUDGMENT

ROBERT L. CARTER, District Judge.

Plaintiffs instituted this action for unpaid compensation, claiming defendants had failed to pay them applicable federal or New York State minimum wage rates and overtime pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a) and New York Labor Law, §§ 190 et seq. and 650 et seq. and New York Department of Labor Regulations, 12 N.Y.C.R.R. § 142–2.2. On June 26, 1998, a temporary restraining order was issued and defendants were ordered to show cause why a preliminary injunction should not be issued against them. A hearing was held on July 1, 1998, and a preliminary injunction was issued enjoining defendants RPP Fashion, Inc., and Shi Yong Sheng from transferring, assigning, selling or otherwise encumbering their property pending final resolution of the controversy. On September 15, 1998, the court entered default judgment against defendants and referred the matter to Magistrate Judge Andrew J. Peck for inquest as to plaintiffs' damages and attorneys' fees.

On October 26, 1998, Magistrate Judge Peck filed his report and recommendation that plaintiffs should be awarded judgment in the sum of $80,204.99 in damages and $19,110 in attorneys' fees and costs. No objections have been filed by defendants as of the writing of this memorandum order and judgment.

The court adopts the report and recommendation as the opinion and judgment of the court for substantially the reasons set forth therein. Judgment is awarded the plaintiffs and against defendants RPP Fashion, Inc., and Shi Yong Sheng in the sum of $80,204.99 in damages and $19,110 in attorneys' fees. Plaintiffs are to recover their costs.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

By Order and Judgment dated September 15, 1998, Judge Carter entered a default judgment against defendants RPP Fashion, Inc. and Shi Yong Cheng, and referred the case to me for an inquest as to plaintiffs' damages and attorneys' fees. Plaintiffs had brought suit for unpaid wages and overtime, statutory liquidated damages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law, and attorneys' fees.

For the reasons set forth below, based on the evidence presented by plaintiffs in the form of affidavits, I recommend that the Court enter judgment for plaintiffs in the amount of $99,314.99 for wages and overtime, statutory liquidated damages and attorneys' fees.

### FACTS

Where, as here, "the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2688 at 58–59 (3d ed.1998). "Once the court determines that a judgment by default should be entered, it will determine the amount and character of the recovery that should be awarded." *Id.* § 2688 at 63.

### The Complaint

The 14 plaintiffs worked for defendant RPP Fashion in a garment factory at 86 Forsyth Street in Manhattan for varying periods between June 1997 and May 1998. (Cplt.¶¶ 1, 13.) The factory is now closed. (Cplt.¶ 1.) Defendant Shi Yong Cheng was owner and general manager of RPP Fashion. (Cplt.¶ 7.) The Court will refer to RPP Fashion and Shi Yong Cheng collectively as "RPP Fashion" or the "Factory."

"Plaintiffs worked on the average six and seven days a week. Most of them worked eleven and twelve hours a day." (Cplt.¶ 14.) RPP Fashion paid plaintiffs during the first six weeks in June and July 1997, but rarely paid them thereafter. (Cplt.¶ 13.)

The complaint alleged causes of action for minimum wage and overtime claims under the FLSA and New York Labor Law, and claims for "spread of hours" and unpaid wages under New York Labor Law. (Cplt.¶¶ 41–48.) [1]

### Injunction and Default Proceedings

Judge Carter entered a TRO and later a preliminary injunction preventing defendants from transferring, selling or removing any property located at the Factory.

As noted above, on September 15, 1998, Judge Carter entered a default Judgment against RPP Fashion.

## EVIDENCE ON THE INQUEST AND ANALYSIS

■ The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, " 'as long as [the Court is] ensured that there was a basis for the damages specified in the default judgment.' " *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997) (quoting *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir.1989)). Here, using affidavits was particularly appropriate because plaintiffs are Chinese-speakers who do not speak English; their piece work cards were in Chinese; and the evidence could best be presented in cumulative chart form. (*See* Kimerling 10/8/98 Damages Aff. Exs. A–B.) The Court therefore received evidence for the inquest in the form of affidavits and exhibits, including charts and calculations, from plaintiffs and their counsel. The Court has carefully reviewed plaintiffs' affidavits, counsel's affidavits, and the calculation charts and summaries prepared by plaintiffs' counsel.

"The plaintiffs were piece workers and kept a record on cards of how many garments they worked on each day. The defendants would use these cards to determine what to pay plaintiffs. When plaintiffs were paid, the defendants would take and keep these cards. When plaintiffs were not paid, the plaintiffs kept their cards to maintain a record of how much they were owed." (Kimerling 10/8/98 Damage Aff. ¶ 3; *see also* Kimerling 10/8/98 Damages Aff. Ex. A: Plfs' Affs.)

Plaintiffs provided their counsel with information about: how many hours they worked each day net of breaks (Kimerling 10/8/98 Damages Aff. Ex. B: charts, col. B); how many days they worked each week (*id.* col. C); and how much they would have earned if they were paid at their piece work rates (*id.* col. G). (*See* Kimerling 10/8/98 Damages Aff. ¶¶ 4–7.)

■ Defendants were served with a copy of plaintiffs' inquest papers but did not respond. In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946) ("[A]n employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of work by just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."); *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir.1997) (following *Mt. Clemens*). Here, plaintiffs' hours worked

---

1. The complaint also asserted claims against Jenna Lane, Inc., a manufacturer of women's sportswear; plaintiffs alleged that Jenna Lane financed the opening of the Factory and so dominated and controlled it as to become plaintiffs' employer under the FLSA and New York Labor Law. (*See, e.g.*, Cplt. ¶¶ 5, 10–12, 17–22.) Pursuant to a settlement agreement, the claims against Jenna Lane were dismissed on July 6, 1998.

were derived from their contemporaneous piece work records. The Court accepts plaintiffs' estimates of hours worked.

Plaintiffs' counsel then compared what plaintiffs would have earned based on their piece work rates including overtime, and what they would have been paid had they been paid minimum wage and overtime. In determining the amount owed each plaintiff each week, plaintiffs' counsel chose between the amount based on the minimum wage with overtime (Kimerling 10/8/98 Damages Aff. Ex. B, col. F) and the piece work rate (*id.* cols. G & I), also considering the impact of statutory liquidated damages. (*See* Kimerling 10/8/98 Damages Aff. ¶¶ 8, 14 & Ex. B, col. J.)

■ Pursuant to the FLSA, the minimum wage was $4.75 an hour for plaintiffs' work up to August 31, 1997 and $5.15 beginning September 1, 1997. 29 U.S.C. § 206(a)(1). (*See also* Kimerling 10/8/98 Damages Aff. ¶ 9.) The FLSA also provides for time and a half for hours worked above 40 hours per week. 29 U.S.C. § 207(a). (*See also* Kimerling 10/8/98 Damages Aff. ¶ 10.) Thus, plaintiffs are entitled to $7.13 per overtime hour before September 1, 1997 and $7.73 per overtime hour after September 1, 1997. (Kimerling 10/8/98 Damages Aff. ¶ 10 & Ex. B, col. F.)

■ The FLSA provides for an additional 100% of the amount owed for minimum wage and/or overtime violations as liquidated damages. 29 U.S.C. § 216(b) (*see also* Kimerling 10/8/98 Damages Aff. ¶ 14.) In other words, under the FLSA, the minimum wage and overtime amounts are doubled. (*Id.*)

■ The non-payment of wages, on the other hand, is only a violation of New York Labor Law § 190 et seq., which provides for liquidated damages of 25% for willful non-payment of wages. N.Y. Labor Law § 198(1–a).

Because of the 100% liquidated damages under FLSA, plaintiffs mostly claim FLSA minimum wage and overtime plus penalties, as opposed to unpaid wages plus the 25% penalty under New York Labor law. (*See* Kimerling 10/8/98 Damages Aff. ¶ 14.) Plaintiffs wage/overtime and liquidated dam-

age amounts are set forth in column K of the Kimerling 10/8/98 Damages Affidavit Exhibit B.

■ In addition, under New York law, plaintiffs are entitled to one extra hour's pay for each day they worked 10 or more hours, at the rate of $4.25 per hour. N.Y. Labor Law § 652; 12 N.Y.C.R.R. § 142–2.4. The amounts owed for this is set forth in column L, and the 25% penalty set forth in column M of Exhibit B to the Kimerling 10/8/98 Damages Affidavit.

The total damages, including statutory penalties, for each plaintiff thus is as follows:

| Plaintiff | Total Damages | Kimerling 10/8/98 Damages Aff. Ex. |
|---|---|---|
| ● Chen Mao Cheng | $ 11,985.41 | B1 |
| ● Ai Min Li | $ 12,464.80 | B2 |
| ● Sui Wah Ko | $ 23,788.54 | B3 & 10/9/98 Supp. Aff. |
| ● Lin Ji Guan | $ 15,924.21 | B4 |
| ● Yun Yan Zou | $ 3,337.99 | B5 |
| ● Yue Chai Chen | $ 4,605.88 | B6 |
| ● Shu Yu Lin | $ 8,865.49 | B7 |
| ● Shu Rong Chen | $ 2,641.31 | B8 |
| ● San Pan Chau | $ 3,868.25 | B9 |
| ● Zi Yue Lin | $ 1,470.94 | B10 |
| ● Yun Ping Zou | $ 2,368.21 | B11 |
| ● Yu Huan Zheng | $ 6,759.95 | B12 |
| ● Chang Fu Lin | $ 28,695.75 | B13 |
| ● Qiu Ping Zou | $ 3,428.36 | B14 |
| TOTAL | $130,204.99 | |

(*See also* Kimerling 10/8/98 Confid. Damages Aff. ¶ 4 & Attachment.)

Based on the information contained in Kimerling's 10/8/98 Confidential Damages Aff. (¶ 4), plaintiffs are entitled to damages of *$80,204.99* in damages, plus attorneys' fees.

***Attorneys' Fees***

■ The FLSA provides for attorneys' fees and costs to a successful plaintiff. 29 U.S.C. § 216(b). Plaintiffs seek reimbursement for 62 hours of attorneys' time at a rate of $300 an hour, for a total of $18,600, plus costs of $510, for a combined cost/fee total of *$19,110.* The Court has reviewed the information provided by plaintiffs' counsel as to his expenses, and his time and activities on the case, and finds it reasonable, particularly in light of the detailed affidavits that had to be prepared for the inquest to prove damages.

**626**

## CONCLUSION

For the reasons set forth above, plaintiffs should be awarded judgment of *$80,204.99*, plus $19,110 in attorneys' fees and costs, for a total of *$99,314.99.*

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Robert L. Carter, 500 Pearl Street, Room 2220, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Carter. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

### SERVICE

Plaintiffs' counsel is to serve this Order, by certified mail, on defendants, and file an affidavit of service with the Clerk of Court, with a courtesy copy to my chambers.

October 26, 1998.